**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THOMAS P. DIXON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-317-F |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Thomas P. Dixon, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Mr. Dixon's applications for disability insurance benefits and supplemental security income benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.    The Administrative Decision**

Plaintiff's applications were denied initially and upon reconsideration. AR 24-25; 251, 255. The Administrative Law Judge (ALJ) held a hearing on April 25, 2005. AR 262-279. He issued an unfavorable decision on July 16, 2005. AR 14-21. The Appeals Council denied Plaintiff's request for review. AR 5-7.

The ALJ applied the five-step sequential evaluation process, *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), and found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. AR 18, 20. At step two, the ALJ determined that Plaintiff "suffers from degenerative disc disease and acute low back strain" and that these impairments are severe within the meaning of the Social Security regulations. AR 18, 20. At step three, the ALJ determined that Plaintiff's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18, 20. At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform "a wide range of medium work activity" limited only by his "need to avoid more than occasional stooping." AR 19.[1] The ALJ found that Plaintiff could perform his past relevant work as a warehouseman and forklift operator. AR 19, 20.

## II.   **Background and Issues Presented for Judicial Review**

Plaintiff suffered an on-the-job injury to his back in February 2003. At the time, Plaintiff weighed approximately 432 pounds. *See* AR 217.[2] An MRI study dated February

---

[1] In the summary of Findings, the ALJ stated that Plaintiff retains the residual functional capacity to perform a full range of medium work. AR 20. The Commissioner states that the second assessment of Plaintiff's residual functional capacity is a typographical error. Brief in Support of Commissioner's Decision at 2 n. 2.

[2] Plaintiff is 6' 1" tall. *See* Plaintiff's Reply Brief Attachment 1 at 1. At 432 pounds, his body mass index (BMI) is 57. *See BMI – Body Mass Index: Adult BMI Calculator*, http://www.cdc.gov/nccdphp/dnpa/bmi/adult_BMI/english_bmi_calculator/bmi_calculator.htm. On October 6, 2003, a medical consultant calculated Plaintiff's BMI to be 52.6. AR 242. According to the Centers for Disease Control and Prevention (CDC), an adult with a BMI of 30 or higher is considered obese. *See Overweight and Obesity: Defining Overweight and Obesity*, CDC, http://www.cdc.gov/nccdphp/dnpa/obesity/defining.htm.   The SSA defines "extreme obesity" in
(continued...)

19, 2003, indicated degenerative disc disease at multiple levels, Modic type 2 changes at L5-S1, and Schmorl's node[3] indenting the superior end-plate of T12. AR 138. On February 26, 2003, Plaintiff was diagnosed with oblique muscle strain to the trunk, degenerative disc disease, and morbid obesity. AR 218. In a Workers Compensation Progress Report dated May 29, 2003, Dr. Michael H. Wright stated that Plaintiff was permanently restricted from lifting more than fifty pounds and was limited to occasional bending and stooping. AR 212. Because of the permanent restrictions, Plaintiff's employer, Sysco Food Service of Oklahoma, LLC, terminated Plaintiff's employment on June 5, 2003. AR 226. The termination letter specifically stated that Plaintiff's employment was terminated because "[t]he permanent restrictions assigned to you . . . by your treating physician prohibit you from performing the essential functions of your job . . . as a Warehouse employee." AR 226.

Plaintiff presents the following issues for judicial review: (1) whether the ALJ erred in failing to properly consider Plaintiff's obesity as a severe, medically-determinable impairment at step two and in failing to consider Plaintiff's obesity in combination with his other impairments at step three; (2) whether the ALJ erred in failing to properly consider the effects of obesity when assessing Plaintiff's residual functional capacity at step four; (3)

---

[2](...continued)
terms of BMIs "greater or equal to 40." *See* SSR 02-1p, 2000 WL 628049 at *2. Extreme obesity represents the "greatest risk for developing obesity-related impairments[.]" *Id.*

[3]"Schmorl's node" is defined as "[a]n upward and downward protrusion (pushing into) of a spinal disk's soft tissue into the bony tissue of the adjacent vertebrae (the bony building blocks of the spine)." *See Definition of Schmorl's Node*, MedicineNet.com, http://www.medterms.com/script/main/art.asp?articlekey=14007. Schmorl's nodes indicate that a degenerative process may be affecting a patient's spine. *Id.*

3

whether the ALJ's conclusion that Plaintiff has no limitation in his ability to do frequent bending is supported by substantial evidence in the record; and (4) whether the ALJ breached his duty to develop the record.

### III.    Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## IV. Analysis

### A. Claims One and Two – Whether the ALJ Erred in Failing to Consider Plaintiff's Obesity at Steps Two, Three and Four

Until October 25, 1999, obesity was included in the Listing of Impairments, 20 C.F.R. Part 404, Appendix 1, Subpart P, Regulation No. 4, Listing 9.09. *See* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 F.R. 46122-01, 1999 WL 637689 (Aug. 24, 1999). In the final rule, the SSA offered this summary explanation for the change:

> We are deleting listing 9.09, "Obesity," from appendix 1, subpart P of part 404, the "Listing of Impairments" (the listings). Although many individuals with obesity are appropriately found "disabled" within the meaning of the Social Security Act (the Act), we have determined that the criteria in listing 9.09 were not appropriate indicators of listing-level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity. However, in response to public comments, we are adding guidance about evaluating claims for benefits involving obesity to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings.

*Id.*

Though Listing 9.09 has been deleted and is not applicable to this case, the ALJ should have considered the effect Plaintiff's obesity has on his other severe impairments and on his ability to do work activities. According to the Social Security Administration, a claimant's obesity could affect findings at every step of the sequential evaluation process: whether an impairment is medically determinable, whether it is severe, whether the claimant meets or equals a listing, and whether claimant's impairments prevent past relevant work or other work that exists in significant numbers in the national economy. *See* SSR 02-01p, 2000

WL 628049 at *3.  Further, the regulations instruct adjudicators to consider that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *1.  The regulations specifically require the ALJ to consider the effects of obesity at steps three and four when, as in this case, the obesity is combined with impairments of the musculoskeletal system.  Section 1.00(Q) of the Listing of Impairments provides:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app. 1.  Further, the Social Security Administration specifically notes that in determining RFC at step four, an assessment of obesity and the effect it has on the individual's ability to perform in a work environment is required.  For instance, the ability to sustain work activity over time must be evaluated:  "In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity." SSR 02-01p at *6.  Where a claimant suffers from obesity, the ALJ should "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." SSR 02-01p at *7.

The ALJ did not list obesity as a severe impairment at step two, nor did he explain why he had concluded that Plaintiff's extreme obesity is not severe. It is true that, to be "severe" an impairment must significantly limit an individual's physical or mental ability to do basic work activities, but "this is a 'de minimus' showing at step two of the five-step process." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (internal quotations and citations omitted). In this case, Plaintiff's physical therapist noted that Plaintiff fatigues rather easily – a condition associated with obesity. AR 155. Additionally, Plaintiff suffers from "disturbance of the musculoskeletal system" which the Agency recognizes as "a major cause for disability in individuals with obesity." 20 C.F.R. pt. 404, subpt. P, app. 1. Moreover, Plaintiff's BMI has been consistently well above 40, the level which the Agency recognizes as "extreme obesity." The ALJ erred at step two in failing to consider whether Plaintiff's obesity is a severe impairment. Moreover, the ALJ should have considered the effects of Plaintiff's extreme obesity throughout the sequential evaluation process including the step four determination of Plaintiff's residual functional capacity.[4]

---

[4] There is some support in the record for the ALJ's determination that Plaintiff retains the residual functional capacity to do medium work. *See* AR 234-242. In determining that Plaintiff could return to his past relevant work, however, the ALJ did not discuss the significance of the evidence that Plaintiff had been fired from his job as warehouse employee precisely because he could not perform his past relevant work with the exertional and nonexertional restrictions assigned by Dr. Wright.

B.   **Claim Three – Whether the ALJ's Conclusion that Plaintiff has No Limitation in his Ability to do Frequent Bending is Supported by Substantial Evidence**

At step four, the ALJ stated that Plaintiff could perform "a wide range of medium work activity." AR 19. The ALJ stated that Plaintiff cannot perform a full range of medium work because Plaintiff needs to avoid "more than occasional stooping." AR 19. Plaintiff contends that the ALJ should have included a limitation in "bending" at step four when he determined Plaintiff's residual functional capacity because Dr. Wright, a treating physician, stated that Plaintiff is permanently limited to no more than occasional "bending and stooping." AR 212.

The Commissioner correctly points out that such a restriction would have been redundant. Nevertheless, if this Report and Recommendation is adopted, the Commissioner will necessarily reconsider Plaintiff's residual functional capacity and should do so within the framework of SSR 85-15.

The Commissioner notes that pursuant to SSR 85-15 "stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body." *See* Commissioner's Brief at 9. The agency does not, therefore, require a separate assessment of a claimant's ability to "bend." This ruling does, however, call into question the ALJ's finding that Plaintiff could perform a "wide range of medium work." AR 19. This ruling states that medium, heavy, and very heavy jobs generally require a person to stoop "frequently." Inability to do so, according to the ruling, could have a substantial effect on the occupational base:

8

> Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. However, because of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base. This is also true for crouching (bending the body downward and forward by bending both the legs and spine). However, crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).

SSR 85-15, 1985 WL 56857 at *7. On remand, the Commissioner should consider and discuss the effect, if any, that Plaintiff's limited ability to stoop would have on the occupational base.

### C.   Claim Four – Whether the ALJ Breached his Duty to Develop the Record

Finally, Plaintiff contends that the ALJ failed to develop the record in that the exhibits include no medical records after November 2003. Plaintiff contends that the ALJ should have questioned him about treatment received since November 2003, should have questioned him about his knee problems, and should have ordered a consultative examination.

Plaintiff does not, however, identify what medical records were available after November 2003. The only additional medical record identified by Plaintiff is a report from Dr. Cherry of Sooner Medical Services attached to the Reply Brief. This report is, however, dated January 26, 2006, after the ALJ had made his decision. Plaintiff's counsel did not

9

request a consultative examination, and there is nothing in the record to suggest that the ALJ should have been alerted to the need for a consultative examination. The ALJ did not err in failing to develop the record in this case.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by January __17th__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __28th__ day of December, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE